## TRICONTINENTAL INDUSTRIES LTD., et al., Plaintiffs,

v.

## Alan B. ANIXTER, et al., Defendants.

### No. 01 C 5526.

United States District Court,
N.D. Illinois,
Eastern Division.

April 16, 2003.

George L. Saunders, Jr., Terry Rose Saunders, Thomas Authur Doyle, Saunders & Monroe, Chicago, IL, for Plaintiffs.

Steven Joseph Roeder, Williams, Montgomery & John, Ltd., Michael D. Freeborn, Fred L. Foreman, Jason Christopher DeSanto, Douglas Alan Albritton, Freeborn & Peters, Vincent J. Connelly, Heather Lee O'Farrell, John Frederick Schomberg, Paris A. Wynn, Jennifer Lynn Rakstad, Melissa J. Pastrana, Mayer, Brown, Rowe & Maw, Theodore Thomas Poulos, Terence H. Campbell, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL, Brian E. Pastuszenski, John J. Falvey, Jr., Courtney Worcester, Testa, Hurwitz & Thibeault, Boston, MA, Leo P. Cunningham, Bruce G. Vanyo, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Laurie B. Smilan, Timothy D. Belevetz, David P. O'Brien, Wilson Sonsini Goodrich & Rosati, PC, Reston, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On September 21, 1998, Tricontinental Industries, Ltd. and Tricontinental Distribution, Ltd. ("Tricontinental") sold assets to Anicom, Inc. ("Anicom") in exchange for Anicom stock. Tricontinental sued individual officers and directors of Anicom as well as PricewaterhouseCoopers, LLP ("PwC"), an accounting firm that provided auditing and consulting services to Anicom in the time surrounding the transaction, for violations of the Securities Acts of 1933 and 1934, and for violations of several Illinois laws. On January 18, 2002, I granted PwC's motion to dismiss the claims against it on the grounds that it was a secondary actor that had made no representations to the alleged victims of the scheme, and thus could be liable for fraud only under an "aiding and abetting" theory, which the Supreme Court has explicitly rejected. *Central Bank of Denver, N.A. v. First*

*Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Tricontinental now moves for reconsideration of that order on the grounds that new law and new evidence warrant reevaluation of the issue of PwC's primary liability under § 10(b) of the Securities and Exchange Act and Rule 10b–5. I deny the motion.

A motion for reconsideration may be granted on the basis of "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). Tricontinental argues that two opinions issued during 2002, as well as new evidence of PwC's level of involvement in the transaction at issue, constitute such a significant change in law and facts. However, Tricontinental misreads the two cases it cites and misinterprets the new facts it offers.

The two new cases Tricontinental points to are *SEC v. Zandford,* 535 U.S. 813, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) and *In re Enron,* No. H–01–3624, 2002 U.S. Dist. LEXIS 25211 (S.D.Tex. Dec. 19, 2002). *Zandford,* a Supreme Court case, is of course controlling authority that would justify reconsideration of a previous order if it altered relevant law, but it effected no change in the law I applied in this case. I dismissed the claims against PwC because it was a secondary, rather than a primary, actor, and thus it could not be held liable for securities fraud. *Zandford* involved only one actor, a securities broker who lied to and stole from his clients. It has no impact on the liability of secondary actors, such as a fraudulent broker's auditors. Thus, it cannot be considered a "controlling or significant change in the law" as described in *Bank of Waunakee.*

*Enron* is equally inapposite. The *Enron* plaintiffs, a class of investors in the failed energy company, filed suit against the corporation and numerous companies that provided it with professional services, including banks, law firms, and the accounting firm Arthur Andersen, alleging that these companies participated in massive securities fraud. The court, finding that the complaint stated a claim against Arthur Andersen, adopted language taken from an amicus brief filed by the Securities and Exchange Commission, and wrote that "when a person, acting alone or with others, *creates* a misrepresentation [on which the investor-plaintiffs relied], the person can be liable as a primary violator [of § 10(b) ] …if…he acts with the requisite scienter." *Enron,* at \*76 (emphasis added). But Tricontinental does not allege that PwC *created* any of the allegedly fraudulent documents, merely that it "reviewed and provided assurance" regarding certain reports provided to investors. To call PwC the "creator" of documents into which it had no input as to either content or form, but which it merely endorsed, is a stretch of the concept of creation.

Tricontinental's final argument is that because PwC met with the plaintiffs and "actively participated in the negotiation" of the transaction it should be considered a "manipulative or deceptive device or contrivance" under § 10(b). But as I discussed in my previous order, these allegations remain conclusory and vague. Tricontinental fails to allege with particularity just what acts or statements by PwC are fraudulent, as required by Rule 9(b). Alleging that PwC lent an "aura of professionalism" to the proceedings does not meet this standard.

As there has been no significant or controlling change in the law or facts of this case since my previous order, the motion for reconsideration is DENIED.